SO ORDERED: October 8, 2013.



_____
James M. Carr
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| JESSICA OLIVER, | ) Case No. 12-04185-JMC-7 |
| | ) |
| Debtor. | ) |
| _____ | ) |

### ENTRY ON VIOLATION OF DISCHARGE INJUNCTION

THIS MATTER came before the Court for a hearing on June 17, 2013 and an evidentiary hearing on July 18, 2013 (together, the "Hearing") on the Motion For Order Of Contempt For Violation Of Discharge Against Creditor Ball State University filed by Jessica Oliver ("Debtor") on May 7, 2013 (Docket No. 21) (the "Motion") and the Objection To Motion For Order Of Contempt For Violation Of Discharge filed by Ball State University ("Ball State") on June 11, 2013 (Docket No. 28) (the "Objection"). The Court, having reviewed the Motion, the Objection, the Memorandum In Opposition To Debtor's Motion For Contempt For Violation Of Discharge

filed by Ball State on August 16, 2013 (Docket No. 39) (the "Brief"), the evidence presented at the Hearing and the other matters of record in this case; having heard the presentations of counsel at the Hearing; and being otherwise duly advised, now **GRANTS** the Motion.

*Jurisdiction and Venue*

The Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 157(a), (b)(1) and 1334, and the General Order of Reference issued by the United States District Court for the Southern District of Indiana on July 11, 1984. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

*Undisputed Facts*

1. Ball State is a state institution of higher education established under Ind. Code § 21-19-2. (Brief, p. 1.)

2. Debtor registered for four independent learning classes at Ball State during the fall 2011 semester:[1] POLS 130 (Ex. 2); THEAT 100 (Ex. 3); JOURN 101 (Ex. 4); and CS 104 (Ex. 5). (Testimony of Dennis Schwartz ("Schwartz") given at the Hearing, 17:18-18:12; 18:18-24; 19:4-22; 20:2-10; 20:16-18.)[2]

3. As part of the online course registration, Debtor saw and electronically acknowledged her review of a Registration Contract for Online, Distance, and Independent Learning Courses (the "Registration Contract"). (Ex. 7; Schwartz testimony, 21:13-22:22.)

4. The Registration Contract provides:

> When you register for classes, you will pay all tuition, fees, fines, and other costs imposed by Ball State University. …

---

[1] All dates subsequently referred to herein occurred in 2011.

[2] All references to testimony given at the Hearing include page and line number citations to the transcript attached to the Brief.

> In exchange for the university's commitment of resources on your behalf, you assume a responsibility to:
>
> 1. Pay the fees assessed for those classes, or
> 2. Complete an Online and Distance Education course drop/withdrawal form, or
> 3. Notify the School of Extended Education at 800-872-0369 or distance@bsu.edu prior to the start of the term if you are unable to attend.
>
> The university will not automatically cancel your registration for nonpayment.

(Ex. 7.)

5. Pursuant to the Registration Contract, a student agrees to pay his/her fees at the beginning of the semester. If not paid, Ball State puts the student on an installment payment plan. (Schwartz testimony, 30:6-23.)

6. A billing statement dated August 13 was generated by Ball State, showing tuition charges of $1,542 for POLS 130 and THEAT 100 and a technology fee of $105 were added to Debtor's account, for a total due on September 1 of $1,647. (Ex. 9; Schwartz testimony, 23:18-24:4.)

7. A billing statement dated September 9 was generated by Ball State, showing the August 18 application of a federal Pell grant in the amount of $1,388 and the September 8 application of a fall Stafford subsidized loan in the amount of $2,239 to Debtor's account. Ball State refunded $1,980 to Debtor on or about September 8 because the amount of federal student loan proceeds exceeded the amount she owed Ball State as of that date. (Ex. 10; Schwartz testimony, 24:9-25.)

8. A billing statement dated October 7 was generated by Ball State, showing the September 12 application of a fall Stafford unsubsidized loan in the amount of $374 and the September 27 application of a fall Stafford unsubsidized loan in the amount of $2,612. Ball

State refunded $374 to Debtor on or about September 12 and $2,612 to Debtor on or about September 27, again because the amount of federal student loan proceeds exceeded the amount Debtor owed Ball State as of that date. On October 4, after the issuance of the refunds, tuition charges of $1,799 for JOURN 101 and CS 104 and a technology fee of $55 were added to Debtor's account. On October 7, an Indiana part-time grant in the amount of $624 was applied to Debtor's account. (Ex. 11; Schwartz testimony, 25:8-22.)

9. At the conclusion of the fall 2011 semester, Debtor owed Ball State $1,325 (the "Debt"), consisting of $1,175 in unpaid tuition charges, $45 in installment plan administrative fees which were added because Debtor did not pay her tuition bill in full by the beginning of the semester, $55 in technology fees, and $50 in late payment fees. (Ex. 1; Ex. 10; Ex. 11; Ex. 12; Ex. 13; Schwartz testimony, 16:17-25; 24:9-14; 25:8-22; 26:3-10; 26:15-20.)

10. To date, Debtor has not paid the outstanding balance on her account to Ball State. (Debtor testimony, 38:20-24, 39:17-19.)

11. Debtor withdrew from the JOURN 101 and CS 104 classes (Ex. 14; Ex. 15) and completed the POLS 130 and THEAT 100 courses, earning three hours of credit for each of the completed classes. (Ex. 16; Schwartz testimony, 26:24-27:11; 27:15-24; 28:9-24.)

12. Notwithstanding the withdrawal, Debtor still owed tuition to Ball State for the JOURN 101 and CS 104 classes. (Ex. 17; Schwartz testimony, 29:3-30:2.)

13. Ball State did not advance any money to Debtor. (Schwartz testimony, 34:19-22.) Ball State did not reimburse any federal agency for any of the student loan proceeds. (Schwartz testimony, 33:14-16.) Debtor is still obligated to the lender(s) with respect to the student loans. (Debtor testimony, 39:23-40:1.)

14. When Debtor enrolled in classes at Indiana Tech, she intended to transfer the

credits she had earned at Ball State. (Debtor testimony, 36:14-25.) She requested a transcript from Ball State, which request Ball State denied because it had placed a hold on her account for unpaid tuition. (Debtor's testimony, 37:1-8.) As of the Hearing, the credits had not transferred from Ball State to Indiana Tech. (Debtor testimony, 37:18-19.)

15. At the Hearing, Debtor testified that she was not aware of what additional costs she may incur if she is unable to transfer the credits from Ball State to Indiana Tech. (Debtor testimony, 40:2-6.) Debtor further testified that she did not have an estimate of the attorney's fees she has incurred in connection with the Motion. (Debtor testimony, 40:10-13.) No further evidence was presented regarding damages Debtor suffered as a result of Ball State's withholding her transcript.

*Arguments of the Parties*

Debtor argues that In re Chambers, 348 F.3d 650 (7th Cir. 2003), is controlling law and that the Debt does not meet the definition of a loan adopted therein. Therefore, the Debt was discharged in her bankruptcy case, and Ball State is violating the discharge injunction by trying to collect the Debt as a condition to giving Debtor her transcript.

Ball State argues that it is not violating the discharge injunction because the Debt was not discharged pursuant to 11 U.S.C. § 523(a)(8)(A) or (B) in Debtor's bankruptcy case. Ball State points to § 523(a)(8)(A)(ii) to argue that by registering for classes electronically and acknowledging the Registration Contract, Debtor created an obligation to repay funds received as an educational benefit. (Brief, p. 8.) Ball State also argues that the Debt meets the definition of "qualified education loan" in § 523(a)(8)(B). (Brief, p. 5.) It further argues that "Congress provided clear definitions for relevant terms" – in particular, BAPCPA added the reference to a "qualified education loan" in § 523(a)(8)(B) – thus rendering the pre-BAPCPA common law

analysis, including that in Chambers, moot. (Brief, p. 4.) However, if Chambers still applies, Ball State argues that the terms of its Registration Contract with Debtor meet the Chambers test for a loan and thus the Debt is also excepted from discharge under § 523(a)(8)(A)(i). (Brief, p. 9.)

*The Chambers Case*

The material facts of this case are analogous to the facts of the Chambers case.

Ms. Chambers failed to pay tuition and related fees she incurred under an open student account to the University of Illinois at Chicago. Chambers, 348 F.3d at 652. After receiving the discharge, she was unable to obtain her transcripts and other papers from the university because it considered the account balance due and owing despite the bankruptcy discharge. Id. The Seventh Circuit Court of Appeals upheld the rulings of the bankruptcy and district courts that the debt was discharged. Id.

"The question presented by this appeal is whether an unpaid balance on a student account meets the definition of an educational loan under § 523(a)(8) and is therefore excepted from discharge in bankruptcy proceedings." Id. at 654. The Seventh Circuit, adopting analysis from the Second and Third Circuits, found that the "nonpayment of tuition qualifies as a loan 'in two classes of cases': ' "where funds have changed hands," or where "there is an agreement … whereby the college extends credit." ' " Id. at 657 (quoting Boston Univ. v. Mehta (In re Mehta), 310 F.3d 308, 314 (3d Cir. 2002) and Cazenovia College v. Renshaw (In re Renshaw), 222 F.3d 82, 90 (2d Cir. 2000)). "The agreement to transfer educational services in return for later payment 'must be reached prior to or contemporaneous with the transfer' of those educational services." Chambers, 348 F.3d at 657 (quoting Renshaw, 222 F.3d at 88). Applying that framework, the Seventh Circuit found that Ms. Chambers' unpaid student account balance

did not qualify as a loan.  Chambers, 348 F.3d at 657.

But for the BAPCPA amendments to the Bankruptcy Code in 2005 which amended the language of § 523(a)(8), Chambers would unquestionably serve as the controlling precedent for the issue raised by the Motion – whether the Debt was discharged in Debtor's chapter 7 case.  In Chambers, the Seventh Circuit expressly left to Congress the opportunity "to protect any educational 'extension of credit' in the future."  Id.  Ball State suggests that Congress accepted the Seventh Circuit's invitation to do exactly that through the BAPCPA amendments, and that because of the inclusion of the defined term "qualified education loan," educational extensions of credit now fall within the categories of debts made nondischargeable under § 523(a)(8)(B).  (Brief, p. 4.)

Section 523(a)(8), including the BAPCPA amendments, provides:

(a)  A discharge under section 727 … of this title does not discharge an individual debtor from any debt –
    (8)  unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for –
        (A)(i)  an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
        (ii)  an obligation to repay funds received as an educational benefit, scholarship or stipend; or
        (B)  any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual[.]

The Court understands how Ball State can read the statute in that fashion.  However, Ball State's only support for its argument is a citation to the BAPCPA section amending § 523(a)(8).  (Brief, pp. 2, 4.)  It offers no legislative history or other court opinions interpreting the statute the

way it suggests.[3]

If Congress had done what Ball State suggested, the Court believes Congress would not have retained the first six words of § 523(a)(8)(B). The statute might instead read:

> (a)  A discharge under section 727 … of this title does not discharge an individual debtor from any debt –
>> (8)  unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for –
>>> (B)  ~~any other educational loan that is~~ a qualified education loan, as defined in section 221(d)(01) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual.

Congress retained the phrase "any other educational loan that is," and thus the Court cannot ignore those six words. "The [Supreme] Court has often said that ' "every clause and word of a statute" ' should, ' "if possible," ' be given ' "effect." ' " Chickasaw Nation v. United States, 534 U.S. 84, 93, 122 S. Ct. 528, 535, 151 L. Ed. 2d 474 (2001) (quoting United States v. Menasche, 348 U.S. 528, 538–539, 75 S.Ct. 513, 99 L.Ed. 615 (1955) and Inhabitants of Montclair Tp. v. Ramsdell, 107 U.S. 147, 152, 2 S.Ct. 391, 27 L.Ed. 431 (1883)). The Court

---

[3]    Ball State cited to the Court the case captioned Liberty Bay Credit Union v. Belforte (In re Belforte), 2012 Bankr. LEXIS 4574 (Bankr. D. Mass. 2012). In Belforte, the following language appears:

> According to the Court in *Rumer v. Am. Educ. Servs. (In re Rumer), 469 B.R. 553 (Bankr. M.D. Pa. 2012),*
>> *[s]ection 523(a)(8)* protects four categories of educational loans from discharge: (1) loans made, insured, or guaranteed by a governmental [*14] unit; (2) loans made under any program partially or fully funded by a government unit or nonprofit institution; (3) loans received as an educational benefit, scholarship, or stipend; and (4) any 'qualified educational loan' as that term is defined in the Internal Revenue Code.
>> *Id. at 561*.

Belforte, 2012 Bankr. LEXIS 4574 at *13-14. That passage was also cited in Beesley v. Royal Bank of Canada (In re Beesley), 2013 WL 5134404 at *3 (Bankr. W.D. Pa. 2013). Those were the only two cases the Court found that "eliminated" the first six words of § 523(a)(8)(B). However, (1) a review of the case cited by Rumer for that proposition – In re Weldon, 2008 WL 4527654 at *2 (Bankr. W.D. Wash. 2008) (not for pub.) – revealed that the Weldon court did not, in fact, address "qualified education loans" at all; and (2) because the Beesley court found the debt non-dischargeable pursuant to § 523(a)(8)(A)(ii), it did not consider whether the debt was non-dischargeable pursuant to § 523(a)(8)(B). Beesley, 2013 WL 5134404 at *5. Therefore, the Court finds those cases unpersuasive.

acknowledges that "[t]he canon requiring a court to give effect to each word '*if possible*' is sometimes offset by the canon that permits a court to reject words 'as surplusage' if 'inadvertently inserted or if repugnant to the rest of the statute ....' " Chickasaw Nation, 534 U.S. at 94, 122 S. Ct. at 535 (quoting K. Llewellyn, The Common Law Tradition 525 (1960)). Here, the Court does not find those words to be either.

The Court recognizes, as Ball State points out in the Brief, that Congress has progressively expanded the reach of § 523(a)(8) that has, over the years, included more 'student loans' in the exception from discharge. (Brief, p. 8; see Roth v. Educ. Credit Mgmt. Corp. (In re Roth), 490 B.R. 908, 921-22 (9th Cir. B.A.P. 2013) (Pappas, J., concurring).) But by retaining the phrase "any other education loan," it appears that Congress has not departed from the notion that a 'student loan' excepted from discharge still must be a loan.

Therefore, the Court reaches a different interpretation from the one suggested by Ball State, which can be described using mathematical terms as follows: "any other educational loan" is a "set," and of all the types of loans that may fall thereunder, only the "subset" of "qualified education loans" falls within the exception to discharge. Said another way, there is a two-tiered analysis: first, whether a debt is an educational "loan" and, if it is, then whether it meets the Internal Revenue Code definition of "qualified education loan."[4] Therefore, the Court must

---

[4] This interpretation is consistent with post-BAPCPA opinions analyzing § 523(a)(8)(B), including two cases Ball State cited to the Court, where the existence of a 'loan' was either not in dispute or found likely to meet the Chambers test. In Carow v. Chase Student Loan Serv. (In re Carow), 2011 Bankr. LEXIS 823 at *1-2 (Bankr. D. N.D. 2011), there were four promissory notes evidencing loans made by Chase Student Loan Service for Debtor's education at Bismarck State College and University of Mary. That court found that those loans met the definition of "qualified education loan" and were non-dischargeable under § 523(a)(8)(B). Id. at *12. The court in Sensient Tech. Corp. v. Baiocchi (In re Baiocchi), 389 B.R. 828, 829-31 (Bankr. E.D. Wis. 2008), found that the educational expense reimbursement program likely met the Chambers test for a loan because the debtor received funds from her employer (Sensient) and she agreed to repay those funds either in the form of service to her employer for two years or in cash if the debtor voluntarily left such employment. In that case, the debtor raised the issue of whether *only* loans are excepted from discharge. Id. at 830. The Baiocchi court ruled on the basis of §523(a)(8)(A)(ii), rather than § 523(a)(8)(B). Id. at 832. See also Rogers v. Key Bank, Nat'l Assoc. (In re Rogers), 374 B.R. 510, 512-13

decide first whether under Chambers and other applicable law, the relationship between Ball State and Debtor that gave rise to the Debt was lender/borrower creating a "loan."

Said another way, notwithstanding the BAPCPA amendments to § 523(a)(8) made after Chambers, the Court still must decide whether the Debt arises from a loan made by Ball State to Debtor using the Chambers framework before it analyzes whether the Debt is a "qualified education loan."

*Is the Debt a "Loan"?*

Under the Chambers framework, the Debt is a loan if either (a) funds have changed hands from Ball State, as lender, to Debtor, as borrower, or (b) there is an agreement reached prior to or contemporaneous with the transfer of educational services whereby the college extends credit. Chambers, 348 F.3d at 657.

There is no evidence in the record that funds changed hands as a loan from Ball State to Debtor. Ball State did not advance any of its own funds to or for the benefit of Debtor. The only money Debtor received from Ball State was a refund of the federal student loan proceeds that exceeded the balance Debtor owed Ball State at the time such proceeds were credited to her account. Those loans are not the subject of the Motion. Therefore, the focus shifts to whether the Registration Contract was an agreement reached prior to or contemporaneous with the transfer of educational services whereby the college extends credit. The Court concludes that it was not.

The Registration Contract was acknowledged by Debtor at the time she electronically registered for classes, which predates the transfer of educational services. It is undisputed that

---

(Bankr. E.D.N.Y. 2007) (existence of loan not in dispute); Vuini v. Zions Bank (In re Vuini), 2012 WL 5554406 at *1-2 (Bankr. M.D. Fla. 2012) (existence of loan not in dispute).

therein Debtor "assume[d] a responsibility to pay the fees assessed for those classes." The Registration Contract does not address what will happen in the event of nonpayment, other than the fact that Debtor's registration will not be cancelled.

This is understandable. The Registration Contract is acknowledged as part of the registration process which occurs *before* the financial process plays out. For example, in this case, Debtor registered for POLS 130 and THEAT 100 on or about July 5. (Ex. 2; Ex. 3.) The tuition charges for those classes were added to Debtor's account on or about July 23, and the billing statement was generated on or about August 13. (Ex. 9.) Debtor paid that balance using federal student loan proceeds applied to her account on August 18 and September 8. (Ex. 10.) It was impossible for Ball State to know with certainty at the time of registration whether Debtor would pay her tuition and related charges on time and in full or whether she would need a financial accommodation of some type.

Thus, while not surprising that the Registration Contract is silent as to what will happen if a student does not pay, without such language the Registration Contract cannot serve as, and is not by itself, evidence sufficient to sustain the inference of a loan. Ball State argues that "*Chambers* does not require a promissory note or other specific formalities to constitute a loan – a simple agreement for repayment prior to the delivery of services is sufficient to establish a non-dischargeable obligation. [Chambers, 348 F.3d at 657.]" (Brief, p. 9.) The Court reads Chambers differently. "The existence of a separate agreement acknowledging the transfer and delaying the obligation for repayment distinguishes a loan from a mere unpaid debt." Chambers, 348 F.3d at 657. What is missing from the Registration Contract is language "delaying the obligation for repayment." Without that, the Court cannot conclude that the Debt is a loan – the Debt is merely an unpaid debt.

Furthermore, the Seventh Circuit suggested that educational institutions could take "simple precautions" to "protect their financial relationships with their students." Id. at 658. "*When students fail to pay tuition bills on time*, institutions can withhold educational services until payment, or they can enter into a separate agreement with the student to accept later payment. A separate agreement to accept later payment would create a loan and would be excepted from discharge under § 523(a)(8)." Id. (emphasis added).  Applying the Seventh Circuit's suggestion to this case, when Debtor failed to pay for the JOURN 101 and CS 104 classes, Ball State would have either not permitted her to continue in those classes or entered into a separate agreement with her to accept payment at a later time.  That separate agreement is the agreement that would have given rise to a loan.  There is no evidence of such separate agreement in this case.

Because the Registration Contract does not give rise to a lender/borrower relationship between Ball State and Debtor, and because there was no other agreement between Debtor and Ball State converting the Debt into a loan, the Court finds that Ball State did not make a loan to Debtor.  Thus, it need not decide reach the second part of the analysis – whether the Debt is a "qualified education loan."

The Debt was not excepted from discharge pursuant to § 523(a)(8)(A)(i) or (B).

*§ 523(a)(8)(A)(ii)*

Ball State asks the Court to find that the Debt was "an obligation to repay funds received as an educational benefit" under § 523(a)(8)(A)(ii).  (Brief, p. 5.)  This argument also fails.

In order to be obligated to ***repay*** funds received, Debtor had to have received funds in the first place.  The cases Ball State cites in support of its argument are factually distinguishable because funds clearly changed hands.  In Belforte, 2012 LEXIS 4574 at *1-2, 4-5, the debtor

obtained funds on a line of credit from her credit union that she used to pay for her children's education. In Baiocchi, 389 B.R. at 829, the debtor was reimbursed by her employer for 50% of the cost of tuition and books she incurred attending law school, and she had to repay any such funds paid to her during the two years prior to her voluntary departure from that employment. In Carow, 2011 Bankr. LEXIS 823 at *2, the debtor entered into four promissory notes with Chase Student Loan Service.

In addition, those cases are also distinguishable in their § 523(a)(8)(A)(ii) analysis because they focused on whether there was an "educational benefit" rather than on whether funds were extended that had to be repaid. Belforte, 2012 Bankr. LEXIS 4574 at *23-25; Baiocchi, 389 B.R. at 831-32; Carow, 2011 Bankr. LEXIS 823 at *10-12.

In this case, funds did not change hands. Ball State did not advance its own funds to or for the benefit of Debtor. The only funds Debtor received from Ball State were refunds of federal student loan proceeds that exceeded the amount she owed Ball State at the time the refunds were issued, none of which Ball State was obligated to reimburse to the issuing federal agency.

Because the Court finds that Debtor did not receive funds from Ball State, she has no obligation to repay funds she did not receive.[5] Thus, the Debt was not excepted from discharge pursuant to § 523(a)(8)(A)(ii).

*Violation of Discharge Injunction*

Having found that the Debt was discharged in Debtor's bankruptcy case, the Court must turn to whether Ball State violated the discharge injunction by withholding Debtor's transcript

---

[5] That is not to say Debtor was not obligated to *pay* Ball State – she clearly was. See Registration Contract, which expressly uses the term 'pay'.

for failure to pay tuition.

      11 U.S.C. § 524(a)(2) provides:

(a) A discharge in a case under this title –
    (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived … .

The Seventh Circuit held that a university's refusal to honor a student's Wisconsin state-law right to receive a certified copy of her transcript until she paid back tuition that had been discharged in her bankruptcy case "was an act to collect a debt and thereby violated the … discharge injunction." In re Kuehn, 563 F.3d 289, 294 (7th Cir. 2009).

      The Court finds that by withholding Debtor's transcript until it receives payment on the Debt, which the Court has decided was discharged in Debtor's bankruptcy case, Ball State is violating the discharge injunction.

      *Damages*

      At the Hearing, Debtor failed to present any evidence on damages. Debtor did not file an adversary proceeding seeking to have the Debt determined dischargeable, and the Court does not believe Ball State should be punished for proceeding in good faith.

      Therefore, the Court hereby determines that the Debt was DISCHARGED in Debtor's bankruptcy case and ORDERS Ball State to provide Debtor with a copy of her transcript. The Court declines at this time to enter a damages award in Debtor's favor. However, should Ball State fail to provide the transcript promptly, the Court reserves the right to revisit the issue of damages and/or punishment for violation of the discharge injunction.

      IT IS SO ORDERED.

\# \# \#
